## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

ROBERT SCHWARTZ, :
    Petitioner, :
     :
v. : 3:19cv1149 (MPS)
     :
COMMISSIONER OF CORRECTION, :
    Respondent. :

## RULING ON PETITION FOR HABEAS CORPUS RELIEF

On July 25, 2019, Petitioner Robert Schwartz, Sr., who is currently in the custody of the

Connecticut Department of Correction confined at Carl Robinson Correctional Institution, filed a

petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging his 2015 state conviction

for violating a protective order.[1] ECF No. 1. Petitioner raised four grounds for relief: (1) the

state's witnesses gave perjured testimony during his jury trial; (2) the trial court improperly

relied on perjured testimony and an inaccurate pre-sentence investigation ("PSI") report in

sentencing Petitioner; (3) the prosecutor committed misconduct by presenting a case against

Petitioner consisting of perjured testimony; and (4) both the state and the trial court failed to

"fully examine" Petitioner's case, including specific facts in family court orders. *Id.* at 6-11.

On October 1, 2019, this court dismissed the petition without prejudice because it

appeared that Petitioner had only exhausted the second ground for relief as required for bringing

a federal habeas petition under § 2254. ECF No. 7 at 4. *See O'Sullivan v. Boerckel*, 526 U.S.

838, 842 (1999). The court noted that Petitioner had exhausted this second claim for relief on

direct appeal, but that the other three claims for relief had not been raised or were currently

---

[1] Petitioner has a maximum release date of November 3, 2020. The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=405809

pending in Petitioner's state habeas petition. ECF No. 7 at 4. This court provided that Petitioner could move to reopen this case by attaching an amended petition after fully exhausting his claims in state court, or he could file a notice indicating his intention to waive all unexhausted claims and proceed solely on the exhausted claims. *Id.* at 5.

On January 13, 2020, Petitioner filed his notice indicating that he intends to proceed with this petition on his fully exhausted grounds despite the risk that a new petition asserting other grounds after full exhaustion could be barred. ECF No. 13. Petitioner also filed a motion to reopen with an attached an amended petition. ECF Nos. 10, 10-1. The court reopened this case and ordered Respondent to show cause why the petition for writ of habeas corpus relief should not be granted. ECF No. 15.

In his amended petition, Petitioner now asserts two grounds for habeas relief: (1) "The evidence was insufficient to prove [Petitioner] was in violation of a criminal protective order;" and (2) "The [Petitioner's] due process rights were violated when the trial court used materially unreliable information at his sentencing hearing." ECF No. 10-1 at 9, 11.

Respondent has filed a response, arguing that one of the two grounds for relief has not been exhausted in accordance with 28 U.S.C. § 2254(b)(1)(A), and that the amended petition can be denied on the merits. Response, ECF No. 19. Petitioner has filed an objection to Respondent's arguments.[2] Pet.'s Obj., ECF No. 20. He asserts that he did exhaust his state court remedies on

---

[2] Petitioner urges the court to disregard Respondent's arguments because the response brief was filed after the date set by the court's show cause order. Pet.'s Obj. ECF No. 20 at 1. However, in the interests of justice, the court exercises its discretion to consider Respondent's brief. *See Dwarven Forge, LLC v. Whitaker*, No. 3:17-CV-2053 (VAB), 2020 WL 3489407, at *4 (D. Conn. June 26, 2020) (quoting *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016) ("district courts have the inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases."))

both grounds because his second claim was in the appeal brief that was "reviewed and ruled on by both Appellate and [Connecticut] Supreme Court[.]" *Id.* at 2

After consideration of the petition, Respondent's arguments, and Petitioner's response thereto, the court concludes that the petition must be DENIED.

## I.       PROCEDURAL BACKGROUND

After a jury trial, Petitioner was found guilty on July 14, 2015, of violating a protective order. ECF No. 10-1 at 1; *State v. Schwartz*, No. H14H-CR15-0677832-S. On August 31, 2015, the trial court sentenced him to five years in prison, execution suspended after three years, and five years of probation. ECF No. 10-1 at 1; *Schwartz*, No. H14H-CR15-0677832-S.

On December 11, 2015, Petitioner appealed his conviction to the Connecticut Appellate Court and raised two grounds for relief: "(1) there was insufficient evidence presented at trial to support his conviction; and (2) the trial court denied him due process by using, and denying him the opportunity to contest, unreliable information during sentencing." *State v. Robert S.*, 179 Conn. App. 831, 832 (2018). The Appellate Court rejected Petitioner's claims and affirmed the conviction. *Id.* The Appellate Court concluded that "the jury reasonably could have found the following facts" on the basis of the evidence:

> The defendant and the victim were married in 2006 and divorced in 2013. The couple has two minor children, ages four and five at the time of trial, both of whom live with the victim. On October 22, 2014, the court, *Murphy, J.*, issued a protective order against the defendant, naming the victim as the protected person. The order provided in relevant part: "Do not contact the protected person in any manner, including by written, electronic or telephone contact, and do not contact the protected person's home, workplace or others with whom contact would be likely to cause annoyance or alarm to the protected person." Under "Additional Orders of Protection," the order provided: "Any access to the minor child must be arranged and facilitated through a third party relative," and "[t]he [d]efendant is allowed to have contact with the protected person only through Our Family Wizard software."

In 2015, the victim and the children were living at the maternal grandmother's home in Bloomfield. That house had a landline telephone (landline). On January 5, 2015, a phone call was placed from the defendant's cell phone to the landline. The victim recognized the defendant's cell phone number on the landline's caller ID. The victim did not answer the phone call. The victim felt anxious when she received this phone call. She checked on the children, checked the doors and locks, and then called the police.

Officer Adrian J. Loignon of the Bloomfield Police Department responded to the residence. Officer Loignon spoke to the victim, who showed him the landline's caller ID. Officer Loignon recorded the phone number from the caller ID, and when he returned to the police department, called the phone number four times. No one answered his calls, and the voicemail box was full. Officer Loignon reviewed the police department's in-house records and learned that the phone number recorded from the caller ID was listed as the defendant's phone number. He also reviewed the in-house records and confirmed that there was a protective order prohibiting the defendant from contacting the victim. On the basis of this information, Officer Loignon applied for an arrest warrant for the defendant.

*Id.* at 833-834 (footnotes omitted). Petitioner sought review from the Connecticut Supreme Court of the Appellate Court's decision, presenting the following questions:

1) Did the Appellate Court improperly hold that ownership of a cell phone, coupled with evidence that a single call was made from that cell phone - even one that failed to result in any ensuing conversation or voice message - permitted the jury to conclude beyond a reasonable doubt that the call was placed intentionally (i.e., not "through accident, mistake, carelessness, or absent-mindedness") by the owner of the phone?

2) Where the Appellate Court adopted a presumption that, in the absence of any credible evidence to the contrary, a jury may infer that the owner of a cell phone intentionally placed any call originating from that phone, did it impermissibly shift the burden of proving all elements of a crime from the state to the defendant?

Resp.'s Appendix E; ECF No. 19-5 at 2-3. The Connecticut Supreme Court denied the petition for certification to appeal the Appellate Court's decision. *State v. Robert S.*, 328 Conn. 933 (2018).

Petitioner filed for a sentence review but his sentence was upheld. ECF No. 10-1 at 5;

ECF No. 19 at 3 n.3; *State v. Schwartz*, No. H14HCR15677832, 2017 WL 778570, at *1 (Conn.

Super. Ct. Feb. 1, 2017).[3] In that ruling, the Sentence Review Division noted:

> [Petitioner] claims that at the center of the case was his desire to be with his children, which he claims prompted his calls. He argues that he is not violent and only wants time with his children. He accused the victim and her family of threatening him. He submitted statistics relating to average sentences for defendants convicted of the same offenses in support of his claim that the sentence imposed in this case was inappropriate. He requests that his sentence be reduced to time served.

*Id.* at *1. It observed that the trial court imposed the sentence noting that Petitioner had a short

criminal record but "was described by relatives and friends as stubborn and aggressive[;]" that

Petitioner was "manipulative" and would not "abide by orders[;]" and that the victim's safety

was at stake. *Id.* It affirmed the trial court's sentence, concluding:

> there is nothing inappropriate or disproportionate about the sentence imposed by the trial court in this case. The petitioner intentionally violated a court order and seeks to minimize his behavior by claiming he was trying to visit his children. This type of conduct warrants the sentence imposed by the trial court. The conduct that led to his conviction and his failure to accept responsibility for that conduct suggest he continues to present a []safety risk to the victim and the community.

*Id.* at 2.

On October 4, 2018, Petitioner filed a petition for writ of habeas corpus in state court.

ECF No. 10-1 at 18; *Schwartz v. Comm'r of Corr.*, No. TSR-CV18-4009745-S (Conn. Super. Ct.

Oct. 4, 2018). Petitioner represents that he raised three grounds for relief: (1) the prosecutorial

impropriety and violation of motion in limine; (2) the perjured testimony of rebuttal witness,

alleged victim, divorce counsel of victim; and (3) ineffective assistance of trial counsel. ECF No.

10-1 at 18. That petition remains pending. *Schwartz*, No. TSR-CV18-4009745-S. On March 11,

---

[3] Petitioner has attached a motion to correct an illegal sentence dated March 9, 2020 to opposition papers that he assertedly filed in this same case. ECF No. 20 at 11.

2019, Petitioner filed another petition for postconviction relief that was declined for review by the state court by order dated March 13, 2019. *Schwartz v. Commissioner of Correction*, TSR-CV19-5000064-S.

## II.   EXHAUSTION

A prerequisite to habeas relief under section 2254 is the exhaustion of all available state remedies. *See O'Sullivan*, 526 U.S. at 842. ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."); 28 U.S.C. § 2254(b)(1)(A) ("[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State"). The exhaustion requirement seeks to promote considerations of comity and respect between the federal and state judicial systems. *See Davila v. Davis*, 137 S. Ct. 2058, 2064, (2017) ("The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to ... correct a constitutional violation.'") (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

To satisfy the exhaustion requirement, a petitioner must present the essential factual and legal bases of his federal claim to each appropriate state court, including the highest state court capable of reviewing it, in order to give state courts a full and fair "opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (*per curiam*) (internal quotation marks and citation omitted). A federal claim has been "fairly present[ed] in each appropriate state court, including a state supreme court with powers of discretionary review," if it "alert[s] that court to the federal nature of the claim." *Baldwin v.*

6

*Reese*, 541 U.S. 27, 29 (2004) (internal parentheses and quotation marks omitted). A petitioner "does not fairly present a claim to a state court if that court must read beyond a petition or a brief . . . that does not alert it to the presence of a federal claim in order to find material . . . that does so." *Id*. at 32.

Failure to exhaust may be excused only where "there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient to render futile any effort to obtain relief." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*). A petitioner cannot, however, simply wait until appellate remedies no longer are available and argue that the claim is exhausted. *See Galdamez v. Keane*, 394 F.3d 68, 73-74 (2d Cir. 2005), *cert. denied*, 544 U.S. 1025 (2005).

Respondent argues that Petitioner has not exhausted his second ground for habeas relief based on the asserted violation of his due process rights at his sentencing hearing because he only sought Connecticut Supreme Court review of the Appellate Court's determination that sufficient evidence supported his conviction. Absent review by the state's highest court, this second ground has not been exhausted for purposes of federal habeas corpus review. *Id*. at 73 ("The petitioner must apprise the highest state court of both the factual and the legal premises of the federal claims ultimately asserted in the habeas petition."). Thus, the instant petition is a mixed petition containing exhausted and unexhausted grounds for relief because Petitioner's second ground for relief was not presented to the Connecticut Supreme Court for review.

Traditionally, a mixed petition is dismissed without prejudice to refiling another federal habeas corpus action after all grounds have been exhausted. *See Slack v. McDaniel*, 529 U.S. 473, 486 (2000). Under 28 U.S.C § 2254(b)(2), "an application for a writ of habeas corpus may

be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State. *See Rhines v. Weber,* 544 U.S. 269, 277 (2005) (unexhausted claim may be denied on the merits where it is "plainly meritless"). "Stated another way, unexhausted claims may be reviewed on the merits only if the habeas court is going to deny the entire petition." *Trimm v. Sheahan*, No. 9:14-CV-0905 TJM/DEP, 2014 WL 3670723, at \*1 n.1 (N.D.N.Y. July 23, 2014). In this instance, the record is sufficient for this Court to determine that both grounds for relief lack merit.

## III.    REVIEW OF THE MERITS

The court will entertain a petition for writ of habeas corpus challenging a state court conviction under § 2254 only if Petitioner claims that his custody violates the Constitution or federal laws. *See* 28 U.S.C. § 2255(a). A claim that a state conviction was obtained in violation of state law is not cognizable in this court. *See Estelle v. McGuire*, 502 U.S. 62, 68 (1991).

Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citations and internal quotations omitted). This Court may not grant a petition for writ of habeas corpus filed by a person in state custody with regard to any claim that was rejected on the merits by the state court unless the adjudication of the claim in state court either:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This is a very difficult standard to meet. *Metrish v. Lancaster*, 569 U.S.

351, 357-58 (2013).

Clearly established federal law is found in holdings, not dicta, of the United States Supreme Court at the time of the state court decision. *See Howes v. Fields*, 565 U.S. 499, 505 (2012); *Carey v. Musladin*, 549 U.S. 70, 74 (2006). "[C]ircuit precedent does not constitute 'clearly established Federal law, as determined by the Supreme Court.'" *Parker v. Matthews*, 567 U.S. 37, 48 (2012) (quoting 28 U.S.C. § 2254(d)(1)). A decision is "contrary to" clearly established federal law when it applies a rule different from that set forth by the Supreme Court or if it decides a case differently than the Supreme Court on essentially the same facts. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court unreasonably applies Supreme Court law when it has correctly identified the law but unreasonably applies that law to the facts of the case, or refuses to extend a legal principle clearly established by the Supreme Court to circumstances intended to be encompassed by the principle. *See Davis v. Grant*, 532 F.3d 132, 140 (2d Cir. 2008).

It is not enough that the state court decision is incorrect or erroneous. *Eze v. Senkowski*, 321 F.3d 110, 124-25 (2d Cir. 2003). Rather, the state court application of clearly established law must be objectively unreasonable, a substantially higher standard. *Id.*; *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). Thus, a state prisoner must show that the challenged court ruling "was so lacking justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Williams v. Taylor*, 529 U.S. 362, 389 (2000) ("state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated").

9

When reviewing a habeas petition, this court presumes that the factual determinations of the state court are correct. 28 U.S.C. § 2254(e)(1). Petitioner bears the burden of rebutting that presumption by clear and convincing evidence. *Id.* Moreover, this court's "review under section 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## A.    Sufficiency of the Evidence (Ground One)[4]

Petitioner maintains that the State failed to present sufficient evidence from which a reasonable jury could find him guilty beyond a reasonable doubt of the offense of criminal violation of a protective order in violation of Connecticut General Statutes § 53a-223.

A § 2254 petitioner challenging the sufficiency of the evidence supporting his conviction must overcome "two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012); *see also Garbutt v. Conway*, 668 F.3d 79, 81 (2d. Cir. 2012) ("We review collateral challenges to the sufficiency of the evidence supporting a state-court jury's verdict under a doubly deferential standard of review."). The federal court must defer to the state court decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d); *Coleman*, 566 U.S. at 651 (holding that an erroneous decision may still be objectively reasonable). The federal court must also defer to the jury's conviction by drawing all permissible inferences in favor of the prosecution. *Dixon v. Miller*, 293 F.3d 74, 81 (2d Cir. 2002). In other words, the court considers "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v.*

---

[4]   Respondent does not contest that ground one is exhausted.

*Virginia*, 443 U.S. 307, 319 (1979). The prosecution's case may be based entirely on circumstantial evidence and "need not refute every possible hypothesis supporting a defendant's innocence." *Id.* A reviewing court "'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (citing *Jackson*, 443 at 326). Thus, on habeas review, a federal court "may set aside the jury's verdict on the ground of insufficiency evidence only if no rational trier of fact could have agreed with the jury" and the court "may do so only if the state court decision was 'objectively unreasonable.'" *Coleman*, 566 U.S. at 651 (citations and quotations omitted).

In his appellate brief, Petitioner argued that "the evidence was insufficient to prove that he engaged in conduct that violated the conditions set out in the criminal protective order[;]" and "[e]ven if he did use the cell phone, the evidence was still insufficient to prove [he] acted with the necessary intent." Pet.'s App. Brief at 7-8; Resp.'s Appendix E; ECF No. 19-1 at 14-15. In support of his argument, Petitioner asserted that no evidence was presented to show that he had "actually made the phone call on January 5, 2015[;]" and even if he did, it was permissible for him to call the "family phone" under the protective order condition that "access to the minor children must be arranged and facilitated by a third party relative." Pet.'s App. Brief at 8-9; Resp.'s Appendix E; ECF No. 19-1 at 15-16. Petitioner maintained that the evidence reflected an intent to permissibly contact the grandmother. *Id.*

The Appellate Court upheld Petitioner's conviction as sufficiently supported by the evidence. *Robert S.*, 179 Conn. App. at 834-39. In its decision, the Appellate Court noted:

> A conviction of criminal violation of a protective order requires proof beyond a reasonable doubt that ''an order . . . has been issued against such person, and such person violates such order.'' General Statutes § 53a-223(a). Regarding intent, ''the violation of a protective order statute is not a specific intent crime. All that is necessary is a general intent that the defendant intended to perform the activities that constituted the violation.'' (Footnote in original.) *State v. Larsen*, 117 Conn. App. 202, 208, 978 A.2d 544, cert. denied, 294 Conn. 919, 984 A.2d 68 (2009).

179 Conn. App. at 836. The Appellate Court went on to conclude that there was sufficient evidence before the jury from which it could conclude that the defendant both intended to, and did, call the landline in violation of the protective order as the jury had "heard evidence that, on January 5, 2015, a call was placed from [Petitioner's] cell phone to the landline at the grandmother's house, where the victim and children were living;" and also the victim's testimony that she recognized the caller ID as belonging to Petitioner. *Id.* at 837. The Appellate Court rejected Petitioner's argument that the state failed to prove that he (and not another person) had made the phone call because "the jury was free to infer that [Petitioner] had made the call" based on the victim's testimony that she recognized the phone number on the caller ID as belonging to him. The Appellate Court noted that Officer Loignon also testified that the phone number belonged to Petitioner, and there was "no evidence before the jury from which it reasonably could have inferred that someone other than [Petitioner] had access to his cell phone." *Id.* at 837-838. Further, the Appellate Court observed "there was no evidence that would compel a conclusion by the jury that [Petitioner] inadvertently dialed the landline from his cell phone." Thus, the Appellate Court concluded: "the jury was free to infer, on the basis of this record and its common sense, that if a call is placed from a phone, the call was made intentionally in the absence of credible evidence to the contrary[,]" and "there was sufficient evidence before the jury from which it could conclude that the defendant was guilty of criminal

violation of a protective order. *Id.* at 838-839. The Appellate Court also considered (but rejected) Petitioner's second argument that it was permissible for him to call the "family phone" because the grandmother was a third party relative and the "family phone" was a phone number he could use to contact her. *Id.* at 839 n.10. The Appellate Court explained:

> First, the plain terms of the protective order prohibit the defendant from contacting the victim's home. Second, even if we were to assume arguendo that the protective order stating "[a]ny access to the minor child must be arranged and facilitated through a third party relative" created an exception from the blanket prohibition on calling the victim's home, we conclude that there was sufficient evidence before the jury from which it could reasonably infer that the defendant was not calling for that purpose. Although the defendant testified that he would communicate with the children on the landline, and that he would contact the grandmother to facilitate visitation with the children, the jury heard evidence that contradicted that testimony.

The Appellate Court set forth the testimony in which the grandmother testified that Petitioner had facilitated visitation with the children through her sister, who did not live with her, the victim and the children; that Petitioner did not want to have "any dealings" with her; that there was no reason for Petitioner to call her house; and she had not spoken to Petitioner for "[o]ver a year or more." *Id.*

Respondent has also submitted the trial transcript from July 14, 2015, in which Petitioner testified that on January 5, 2015, he was traveling to the DC/Virginia area to complete reciprocity for his nurse's aide license. Transcript at 14-15 (lines 27, 1-2); Resp.'s Appendix H; ECF No. 19-8 at 15-16. When questioned whether he recalled making the January 5, 2015 phone call, Petitioner stated: "Honestly, I don't because the details of that report were just released to me a couple of weeks ago. And that's over six months ago. I don't remember specifics regarding that call. But, I do know that we do use those two numbers to communicate." Transcript at 13 (lines 21-25); Resp.'s Appendix H; ECF No. 19-8 at 14.

Although it appears that Petitioner seeks an alternative interpretation of the evidence and testimony presented to the jury, the jury was entitled to believe the prosecution witnesses' testimony and the court must defer to the jury's assessment of credibility. On habeas review, this Court has "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by [it]." *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983). Viewing the evidence presented at trial in the light most favorable to the prosecution, as the Court must, the Court concludes that sufficient evidence supported the jury's determination that Petitioner was, beyond a reasonable doubt, in violation of criminal violation of a protective order.  The jury was entitled to resolve any credibility issues in favor of the prosecution and find the witnesses credible, and this court must defer to that resolution. Moreover, Petitioner has not shown that the Connecticut Appellate Court was objectively unreasonable in holding that sufficient evidence existed. Accordingly, the Court denies Petitioner's application for a writ of habeas corpus on the ground of insufficient evidence.

### B.    Materially Unreliable Information Used At Sentencing

Petitioner claims that the trial court relied upon "materially unreliable information" at his sentencing hearing. ECF No. 10-1 at 11. In his habeas petition, Petitioner references use of a presentence investigation report and testimony from cases that had been nolled due to "perjured & erroneous statements" to the police "by the divorce counsel and alleged victim." *Id.* In his brief to the Connecticut Appellate Court, Petitioner presented the following factual basis in support of his due process claim:

> A presentence investigation report ("PSI") was prepared and it contained [Petitioner's] criminal record, which included two pending cases which included charges for custodial interference, threatening and failure to appear. [The victim] submitted and read a letter to the trial court which included allegations of criminal conduct. Specifically, she claimed

14

that the defendant broke into her house and on several occasions kidnapped the children. She also indicated that the defendant was physically abusive of the children and that she was threatened with bodily harm. Some of these allegations appear to relate to the pending charges listed in the PSI.

Pet.'s App. Brief at 11; Resp.'s Appendix A; ECF No. 19-1 at 18 (citations to the record omitted). Petitioner asserted further:

[Petitioner] indicated to the trial court during sentencing that he had documentation that contradicted the unsubstantiated allegations made by [the victim] in her statement that needed to be examined in making a sentencing decision. He noted specifically the claims regarding breaking into the house and the alleged kidnapping of the children. Indirectly, he challenged the pending criminal charges in the PSI because he noted that some of the unsubstantiated allegations made by [the victim] related to the pending charges. He also challenged the credibility of [the victim] regarding those allegations. In response to his request, the trial court focused solely on the credibility issue and precluded the defendant from submitting any documentation because he claimed he could not "judge the credibility of somebody else at a separate hearing."

Pet.'s App. Brief at 15-16; Resp.'s Appendix A; ECF No. 19-1 at 22-23 (citations to the record and footnote omitted). Petitioner later noted that, although the victim had alleged that he had "kidnapped the children" and threatened her with bodily harm, his criminal record was "[de]void of such convictions[;]" he acknowledged, however, that he did have a custodial interference charge. Pet.'s App. Brief at 18; Resp.'s Appendix A; ECF No. 19-1 at 25. He argued that "[t]o the extent the allegation of kidnapping related to the custodial interference charge, the nature of the charge itself refutes her patently false characterization that the interference was a kidnapping[;]" and "[g]iven this exaggeration alone, the trial court should not have relied on any of the information contained in the letter because there is a strong likelihood that [the] bulk of her letter was fabricated exaggerations made in an attempt to cast the defendant as [a] violent person. Pet.'s App. Brief at 18-19; Resp.'s Appendix A; ECF No. 19-1 at 25-26.

He argued that the trial court applied "flawed" reasoning in denying him the opportunity to present mitigating evidence because he was challenging the "veracity and credibility of [the victim] in the present proceeding as well as the conclusions reached by the judge or magistrate in those proceedings to access the credibility, reliability and veracity of statements made by the victim in proceeding before him." Pet.'s App. Brief at 16; Resp.'s Appendix A; ECF No. 19-1 at 23. He asserted that "an absolute bar on any offer of evidence reflects an abuse of discretion." Pet.'s App. Brief at 16; Resp.'s Appendix A; ECF No. 19-1 at 23. He complained of having been "precluded from submitting any evidence that would prove the allegations made by [the victim] were materially inaccurate[;] however, the record reflects that the most egregious claims were shown to be materially false or and least severely misleading and otherwise wholly unreliable." Pet.'s App. Brief at 18; Resp.'s Appendix A; ECF No. 19-1 at 25.

As the Appellate Court noted, Petitioner submitted a letter to the court at his sentencing hearing, and "[d]uring allocution, [he] claimed, in relevant part, that: (1) "the protective order at issue in the case was 'an outdated court order,' which had been modified 'specific to things like family access and stuff like that'; (2) the family court, in its dissolution order, issued credibility determinations regarding certain claims made by the victim; (3) there was 'documentation in opposition' to some of the claims made by the victim; (4) he documented the victim's family members threatening and harassing him, even while he was incarcerated; and (5) he had 'supporting documents showing things contrary' to 'things that [the victim] alleged in the police report.'" *Robert S.*, 179 Conn. App. at 841.

The sentencing court had explained that the court could not "assess the credibility of what somebody said at some other hearing," and "could 'only decide what happened in the hearing it

presided over.'" *Id.* at 841-842. The sentencing court provided further: "All I'm here to do right now is to decide how much time, if any, should be given to you because of that finding of guilty. I recognize the two of you had a long history of custody battles and trials and things of that sort. That's been made very clear, but what I'm saying to you is that it wasn't me who decided the credibility of those people at those separate trials. All I have to do is decide how much time to give you as a result of a jury finding you guilty of this violation." *Id.* at 842.

"[I]n consideration of [Petitioner's] statements to the court, the victim's statement, and information contained in the PSI report, the court sentenced the defendant to five years incarceration, execution suspended after three years, followed by five years of probation[;]" and it also issued a standing criminal protective order, listing the victim as the protected person, until August, 2065." *Id.* The sentencing court noted "that it found the defendant to be stubborn, aggressive, manipulative, and controlling[;] … that the victim indicated that she was fearful for the safety of herself and her children, and that the defendant's statements to the court and behavior in violating the protective order indicated that 'whatever order I issue, you are not particularly going to abide by because you are accusing everybody else of being the wrong people and not accepting any responsibility at all, and I have absolutely no assurance for the safety of this victim and the children.'" *Id.*

After Petitioner requested a sentence reduction, "the court responded: 'I understand that you want to have a relationship with your children, but as I said to you just a minute ago, I am deeply troubled by your manipulation particularly when you accused everybody in this courtroom and other courts of preventing you from having a relationship with your children when it's your behavior that has done so. . . .'" *Id.* at 842-843. The court concluded its reasoning

with: "'I continue to be very nervous about the safety of these individuals because of your actions and because of the attitude toward this whole case.'" *Id.*

A sentencing court is afforded "wide discretion" when determining appropriate sentences. See, e.g., *United States v. Grayson*, 438 U.S. 41, 49–50 (1978); *Williams v. New York*, 337 U.S. 241, 246 (1949). Any information or circumstance shedding light on the defendant's background, history and behavior is proper for the sentencing judge to consider when the judge makes his or her determination. *Williams*, 377 U.S.at 249-50. *See* also *Pennsylvania ex rel. Sullivan v. Ashe,* 302 U.S. 51, 55, 58 (1937) ("For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender"). This is to "ensure[ ] that the punishment will suit not merely the offense, but the individual defendant." *Pepper v. United States*, 562 U.S. 476, 488 (2011) (internal quotation marks omitted). However, due process is violated when the information on which the defendant is sentenced is "materially untrue" or is, in fact, "misinformation." *See Townsend v. Burke,* 334 U.S. 736, 741 (1948) ) (concluding sentencing based on "materially untrue" assumptions concerning a prisoner's criminal record was inconsistent with due process of law).

The Connecticut Appellate Court concluded that the record "read as a whole" made clear that the sentencing court "did not substantially rely on the challenged information when it determined [Petitioner's] sentence." *Robert S.*, 179 Conn. App. at 844. The Appellate Court rejected Petitioner's argument that the sentencing court had violated his due process rights by considering the victim's statement to the court and "not [permitting him] to present any evidence

in mitigation of the sentence ...." *Id.* In rejecting Petitioner's first assertion, the Appellate Court

explained:

> Before imposing the sentence, the court noted: (1) that the case stemmed from a "long
> history" of conflict between the parties, particularly over child care and custody; (2) the
> evidence from trial that contradicted the defendant's claim that he called the landline to
> arrange visitation with the children; (3) information and statements contained in the PSI,
> including one by a relative referring to him as "stubborn and aggressive," and one by a
> friend that indicated that the defendant was "not willing to lose the battle to win the war";
> (4) the "contentious" nature of this case; (5) its own assessment of the defendant's
> parenting skills, particularly in light of his decision to place the children "in the middle of
> a custody battle"; (6) evidence that the defendant violated the protective order; (7) the
> defendant's statements to the court, particularly accusations against the victim's family
> members and the courts, which indicated to the court "how manipulating and controlling"
> the defendant could be; (8) the defendant's failure to accept responsibility for his actions;
> and (9) its own concerns for the safety of the victim. Even if this court were to assume,
> arguendo, that the victim's statements to the court contained information that was
> materially untrue or unreliable, as the defendant contends, we conclude that the defendant
> has not shown that the court substantially relied on that information. The court did not
> directly refer to the challenged information, and there was sufficient reliable information
> on which the court relied in sentencing.

*Id.* at 844-845.

The Appellate Court went on to observe that the sentencing court had not "impose[d] 'an

absolute bar on any offer of evidence' but had permitted [Petitioner] to submit evidence and to

address the court, both during allocution and through counsel." *Id.* at 845. The Appellate Court

noted that the sentencing court had "declined only to hear evidence that it determined was

outside the scope of the sentencing hearing[,]" which was within the court's discretions in

accordance with "the rules of practice afford[ing] the court discretion in permitting evidence 'on

any matter relevant' to the disposition."[5]  *Id.* at 845. Accordingly, the Appellate Court

---

[5] Thus, the Appellate Court concluded: "It was within the court's discretion to prevent the defendant from
presenting evidence that it determined was not relevant to the sentencing." *Id.*

determined that Petitioner had failed to establish a constitutional violation based on the sentencing court's decision.

Upon review of the record, including the sentencing proceeding transcript, this court concludes that the Connecticut Appellate Court reasonably determined that the sentencing court did not commit a constitutional error by precluding Petitioner or his counsel from submitting evidence or by relying on materially untrue or unreliable information.

Here, the sentencing court clearly permitted Petitioner to submit a letter and to have the opportunity to present his views during the allocution. *See Robert S*., 179 Conn. App. at 575, 577. Moreover, the sentencing transcript reflects that the sentencing court specifically queried Petitioner's counsel as to whether he and Petitioner had reviewed the PSI and whether there were any inconsistencies that needed to be corrected. Sentencing Transcript, at 2 (lines 17-23); Resp.'s Appendix I; ECF No. 19-9 at 4. In response, Petitioner's attorney pointed out minor corrections. Sentencing Transcript, at 2-4; Resp.'s Appendix I; ECF No. 19-9 at 4-6.

As the Appellate Court observed, the sentencing court imposed Petitioner's sentence on the basis of the broad range of information, including the evidence at Petitioner's trial, the victim's expressions of fear for herself and her children, characterizations of Petitioner by family and associates reflected in the PSI, and Petitioner's own statement and behavior. *See Robert S*., 179 Conn. App. at 576-577. Furthermore, the sentencing court recognized "from the PSI that the [Petitioner] doesn't really have much of a criminal record[;]" that he had, *inter alia,* a pending custody interference matter; that the victim had indicated "she is very fearful of the [Petitioner] and that he is very scary;" and that his mother described him as "stubborn and aggressive even

though he is [] non-violent[.]" Sentencing Transcript, at 24-25 (lines 24-27; 1-15); Resp.'s

Appendix I; ECF No. 19-9 at 26-26.

The record demonstrates that the sentencing court did not violate Petitioner's due process

rights by relying on "materially" inaccurate or unreliable information when it imposed

Petitioner's sentence. Furthermore, Petitioner has not demonstrated, and this court cannot

conclude, that the Connecticut Appellate Court decision is contrary to, or an unreasonable

application of, clearly established federal law as established by the Supreme Court of the United

States.

In sum, Petitioner is not entitled to habeas relief on this claim.

## IV.     CONCLUSION

For the foregoing reasons, the petition for writ of habeas Corpus [ECF No. 10-1] is

**DENIED**. The clerk is directed to enter judgment in favor of Respondent and to close this case.

Any appeal from this order would not be taken in good faith. Thus, a certificate of

appealability will not issue.

SO ORDERED at Hartford, Connecticut this 23d day of October, 2020.

/s/
_____
Michael P. Shea
United States District Judge
